# JASSY VICK CAROLAN

### LOS ANGELES  SAN FRANCISCO

355 South Grand Avenue, Suite 2450 | Los Angeles, CA 90071 | T 310.870.7048 | F 310.870.7010 | JASSYVICK.COM

Jean-Paul Jassy
jpjassy@jassyvick.com

**MEMO ENDORSED**

October 30, 2025

*Via ECF*
Hon. Gary Stein
U.S. Dist. Ct., S.D.N.Y.

        *Re: Zarour v. Penske Media Corp., et al.*, No. 24-cv-02334-ALC

Dear Judge Stein:

      Defendants and Counterclaimants ("Defendants") write pursuant to section C.2 of Your Honor's Individual Practices to request a conference regarding Plaintiff Alex Zarour's failure to adequately and timely respond to several of Defendants' requests for production. The parties have met and conferred extensively since June 2025 regarding Zarour's responses to written discovery that Defendants served in February 2025, including via multiple letters, telephone calls, and emails. While the process has been productive with respect to Defendants' interrogatories, Zarour's document productions in this case have been slow and drawn out.

      Defendants are continuing to meet and confer on various issues with Zarour's discovery responses. ***This pre-motion letter concerns just two categories of documents*** that Defendants have repeatedly maintained—to Zarour, and to the Court at the pre-settlement conference on October 3, 2025—are critical for their valuation of the case and their preparation for the upcoming mediation on November 10. Those categories are (1) all of Zarour's licenses that he intends to rely on to establish his purported actual damages in this case (he is functionally limited to actual damages and only comparable licenses would be relevant); and (2) all of Zarour's communications with his clients (the third-party real estate agents and brokers) who commissioned Zarour to take the photographs at issue. While Defendants have received some of these documents, Zarour refuses to confirm that he has completed his search and production of these documents, and he will not commit to providing such documents at a date certain reasonably in advance of the mediation.

      Defendants are not asking for an expedited production of all potentially relevant documents. Rather, Defendants are focused here on two critical categories of documents at the heart of this case that they have been waiting over eight months to receive in full.

### Relevant Factual and Procedural Background

      Zarour filed this case more than a year ago, on March 28, 2024. Dkt. No. 1. He filed his operative Second Amended Complaint on October 30, 2024. Dkt. No. 38. Defendants filed their Answer and Second Amended Counterclaims on November 27, 2024. Dkt. No. 39.

      Defendants served their first set of requests for production on Zarour on February 17, 2025. Zarour served his responses to Defendants' requests for production on May 28, 2025—99 days after Defendants served them.

      But those were just Zarour's *written* responses. Zarour did not make his first document production until a month and a half later, on July 12, 2025. That production contained 54 separate

October 30, 2025
Page 2

PDF files, each of which contained many separate documents combined into one file—a production format that failed to comply with multiple core provisions of the Parties' Stipulation and Order Governing Production and Use of Electronically Stored Information ("ESI Protocol"). Defendants alerted Zarour to this problem on July 14, and Zarour re-produced those documents weeks later, on August 5. Zarour made additional document productions on August 15 and August 28.

On September 23, Defendants told Zarour that the three document productions he had made as of that date appeared incomplete, in particular because they did not include the communications between Zarour and the agents who represented the properties at issue in this case and who hired him to photograph them. Those communications are critical to showing the license terms (if any) under which Zarour delivered his photos to his clients, and his clients' understandings of those terms. It is essential to this case to determine whether Zarour's clients believed they had the right to offer these photographs to news outlets they solicited to write about the properties, including Defendants' publications. Given the upcoming mediation, Defendants asked Zarour on September 23 to confirm by September 30 that he would complete his document productions and provide a privilege log by October 10. Defendants selected October 10 to give themselves ample time to review and analyze Zarour's production for use in their mediation brief and at mediation.

On September 30, Zarour's counsel responded that "Zarour continues to search for and produce responsive documents and communications on a rolling basis. These will be produced, along with a privilege log if necessary, in due course." Defendants pointed out in response that nearly all of the documents Zarour had produced by that time were documents that Zarour had already produced to Defendants in *pre-litigation* early discovery—and thus were documents that Zarour could and should have produced with his initial disclosures months earlier (but did not). Defendants also noted that Zarour is just one person who had had nearly eight months to search for and collect responsive documents. Defendants therefore reiterated their demand for confirmation that Zarour's document productions would be complete by October 10.

On October 1, Zarour responded that he would serve "his document production and privilege log by October 20," without confirming whether that production would complete his production of responsive documents, or whether additional production would be coming.

On October 6, in an effort to clarify and help prioritize, Defendants' counsel wrote to Zarour's counsel: "From our perspective, the damage calculations (and their bases, including apples to apples licenses, if any exist) really should be prioritized in order for the mediation to be maximally productive. If we don't get the damage calculations, or if they come too late for a meaningful review, then we will assume (and tell Judge Stein) that Plaintiff has no real confidence or support for such calculations or it wouldn't have taken him 8+ months to produce them. If you want us to take the damage calculations seriously, please make them a priority."

Zarour did make an additional production (albeit without an accompanying privilege log) on October 20. But when Defendants asked Zarour to confirm that his October 20 production entirely completed his document productions, he responded on October 22 that he "continues to search for responsive information but has produced the documents he has thus far located and intends to produce."

October 30, 2025
Page 3

So, in a letter dated October 24, Defendants again reiterated their demand for a complete production of documents, this time with an emphasis on (1) any licenses or invoices he intends to rely on and (2) all of his communications with the third parties who hired him to take the photographs at issue in this case. Defendants requested that Zarour confirm by October 27 that those two categories of documents would be produced no later than October 31.[1]

Zarour responded on October 27, but he still would not commit to a complete production of the documents Defendants sought, by October 31 or any other date. Instead, Zarour's counsel responded that they would "discuss internally and with our client and respond later this week" (i.e., the week of October 27). On October 28, Defendants responded that they could not continue to wait idly by without confirmation from Zarour when the third-party licenses and communications would be produced and confirmed that they would be moving forward with this pre-motion letter. As of the filing of this letter, Zarour has not responded to that communication.

**Zarour's Delayed Productions Prejudice Defendants' Ability to Prepare for Mediation**

Defendants have communicated to Zarour repeatedly over many months that they require his complete document productions for mediation to be successful. Zarour's delay in completing his search for and production of documents—including by waiting until just two weeks before mediation briefs are due to "produce[] the documents he has thus far located"—continues to prejudice Defendants' ability to prepare for a productive mediation.

As I explained at the pre-settlement conference on October 3, 2025, and as Defendants have reiterated to Zarour multiple times since, the highest priority documents that Defendants need Zarour to finish locating and producing as soon as possible are the licenses, invoices, and communications at issue in this letter. These documents likely include critical evidence because they go directly to Zarour's alleged actual damages (basically the only measure of damages he could get and only if reasonably comparable to the allegedly infringing uses), and the commissioning agents' understanding of how they could use Zarour's photographs. But Zarour has refused or evaded multiple requests by Defendants that he confirm that his production of those documents is complete.

Defendants therefore request that the Court order Zarour either to (1) provide that confirmation, or else (2) produce any outstanding documents in those categories no later than November 5, 2025, so that Defendants can review and analyze those documents in advance of mediation.

---

[1] That letter raised other issues with Zarour's productions, too. For example, Zarour's October 20 production included documents with time stamps in *February and March 2025*, reflecting that Zarour had printed those emails and had them ready to produce—but instead sat on them—for seven to eight *months* before he produced them. That fact belies Zarour's earlier representations that he was "continu[ing] to search for" responsive documents. Moreover, Zarour's collection of documents by printing them was not forensically sound, and as a result his productions continue to disregard his obligations under the parties' ESI Protocol by, among other things, omitting key metadata and the attachments to the emails he produced. The parties are continuing to address these issues more broadly, but these shortcomings infect many of the documents that Zarour *did* produce in the two categories at issue in this letter.

October 30, 2025
Page 4

                                                 Respectfully submitted,

                                                 Jean-Paul Jassy
                                                 Jassy Vick Carolan LLP

Application denied without prejudice.  The Court is not convinced that the parties have meaningfully met and conferred over the specific categories of documents that Defendants here seek, although the Court appreciates Defendants' counsel's focus on evidence in support of Plaintiff's damages calculations, and agrees that confirmed production of such materials is important for purposes of the settlement conference.  The Court encourages the parties to meaningfully meet and confer over telephone, video conference, or in person on these specific categories of documents before the end of the week, in advance of the November 10, 2025 settlement conference.  To the extent that the parties agree to certain categories of documents that are outstanding and due to Defendants, Plaintiff's counsel should make best efforts to provide those additional materials, even in part, to Defendants' counsel in advance of the settlement conference.  To the extent that Plaintiff alleges that such materials have already been provided, Plaintiff should identify to Defendants' counsel where such materials can be found, or re-send those specific materials, in advance of mediation on November 10, 2025.  Nothing herein shall prevent either party from requesting a discovery conference on these issues in the future.  SO ORDERED.

Date:   November 4, 2025
           New York, NY

Gary Stein
United States Magistate Judge
Southern District of New York